# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **PETER A. HALL, II,** | Case No. 1:19 CV 1727 |
| Plaintiff, | Judge Christopher A. Boyko |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Peter A. Hall, II ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated July 31, 2019). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed**.**

## PROCEDURAL BACKGROUND

An an administrative law judge ("ALJ") denied Plaintiff's first application for DIB in August 2014. (Tr. 80-90). Plaintiff filed for DIB and SSI a second time in June 2016 and July 2017 respectively, alleging a disability onset date of November 11, 2015. (Tr. 195-96, 202-07). His claims were denied initially and upon reconsideration. (Tr. 119-22, 126-28, 130-31). Plaintiff then requested a hearing before an ALJ. (Tr. 133). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on April 4, 2018. (Tr. 31-76). On August 1, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 15-25). The Appeals Council

denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on July 30, 2019. (Doc. 1).

FACTUAL BACKGROUND[1]

Personal Background and Testimony

Born in 1983, Plaintiff was 32 years old on his alleged onset date. *See* Tr. 202. He alleged disability based upon lumbar spinal stenosis, facet arthropathy and radiculopathy, Scheuermann disease of the thoracic spine, chronic pain syndrome, thoracic spondylosis, sacroiliitis, sciatica, ventricular diastolic dysfunction, and hypertension. (Tr. 251). Plaintiff last worked in 2012 as an overnight merchandiser for Sam's Club. (Tr. 43-44).

Plaintiff testified that, in 2010, he sought medical treatment for a back spasm. (Tr. 47). He treated with muscle relaxers and returned to work. *Id*. In April 2012, he was packing a pallet at work and "something just did not feel right". (Tr. 47-48). Plaintiff went home and his legs felt like "Jell-O" the next day; the numbness and tingling continued through to the date of the hearing. (Tr. 48). He had intense pain in his lower back when sitting for long periods and pain in his mid-back when standing for long periods. (Tr. 49).

Plaintiff also had a diastolic dysfunction. (Tr. 50). He took medications, but the condition still caused stress pains in his back and a "shambling gait" which necessitated the use of a cane. (Tr. 50-51). Plaintiff required the cane "[p]retty much all the time", both outside and inside his home. (Tr. 51). The condition also caused pedal edema and cellulitis in his right leg. (Tr. 53-54). Plaintiff needed to elevate his legs above heart level to control the swelling; he also wore compression stockings. (Tr. 63-64).

---

1. The undersigned only summarizes the records relevant to Plaintiff's arguments.

Plaintiff lived with his mother and younger brother. (Tr. 40). His mother was recovering from a recent surgery, so Plaintiff drove her where she needed to go. (Tr. 41). On a typical day, Plaintiff's back pain woke him up. (Tr. 57). He sat on the edge of his bed until the pain and spasms stopped. *Id*. Plaintiff needed to constantly shift positions throughout the day. (Tr. 58). He occasionally ran a grocery errand for his mother and had no social life outside of weekly church services. (Tr. 58-59). He spent the weekends with his 12-year-old son. (Tr. 59-60).

Relevant Medical Records

Plaintiff treated with his primary care physician, Mark Stabile, D.O., four times between September 2015 and January 2016. (Tr. 1232, 1236, 1242, 1244). Plaintiff reported back, joint, knee, and neck pain at times. (Tr. 1232, 1242, 1244). Dr. Stabile recorded normal cardiovascular examinations throughout and no edema. (Tr. 1232, 1236, 1242, 1244). Dr. Stabile assessed, *inter alia*, Scheuermann disease of thoracic spine, lumbar stenosis, chronic back and neck pain, and lumbar radiculopathy. (Tr. 1233, 1236-37, 1244). He prescribed, monitored, and adjusted Plaintiff's medications. (Tr. 1245-46, 1237, 1234). X-rays taken prior to the October visit revealed decreased disc space between C4/C5 and C5/C6, osteophytes in the cervical and thoracic spine, and evidence of an old compression fracture. (Tr. 1242).

Plaintiff treated with Henry Debeic, D.O., in August 2016. (Tr. 1357-60). He reported back pain and stiffness. *Id*. Dr. Debeic found normal heart function and no edema. (Tr. 1358-59). Plaintiff walked with a cane. (Tr. 1358). Dr. Debeic diagnosed, *inter alia*, degenerative disc disease of the thoracic spine and lumbar disc disease. (Tr. 1360).

During an annual cardiology appointment in December 2016, a physician's assistant found trace peripheral edema on examination and noted Plaintiff walked with a cane. (Tr. 1465-66). She noted Plaintiff's diastolic dysfunction was discovered on a prior echocardiogram, but there were

no signs of congestive heart failure and he should continue his current medication, Losartan. (Tr. 1466).

Plaintiff reported to the emergency room January 2017 for a hot, red lower right leg, suspecting cellulitis. (Tr. 1319). Providers agreed and prescribed antibiotics. (Tr. 1320).

In February 2017, Plaintiff twice saw Dr. Stabile reporting edema in his right leg. (Tr. 1421-24, 1411-12). Dr. Stabile recorded normal cardiovascular examinations at each visit (Tr. 1424, 1414); he had no edema at one visit (Tr. 1424), and "mild" edema at the other (Tr. 1414). Dr. Stabile diagnosed cellulitis of the right leg which was improving (Tr. 1424), and lymphedema for which he recommended continued use of compression stockings (Tr. 1415).

Plaintiff reported to the emergency room in February with complaints of shortness of breath and worsening pain and swelling in his right leg. (Tr. 1301-02). Providers noted 1+ edema and erythema in the right leg and tachycardia; he had a normal respiratory examination. (Tr. 1302). An EKG showed no acute ischemic findings and his labs were unremarkable. (Tr. 1303, 1305). Providers recommended a venous evaluation and follow up with his primary care provider. (Tr. 1303).

Plaintiff treated with Dr. Stabile four times between April and September 2017. (Tr. 1372-75, 1382-85, 1391-94, 1401-04). Plaintiff reported chronic neck and back pain and some pain in his AC joint and right shoulder. (Tr. 1382, 1391, 1401). He had normal cardiovascular examinations throughout and no edema. (Tr. 1375, 1385, 1394, 1404). In August, Plaintiff reported that a gastrointestinal medication seemed to help his edema. (Tr. 1382).

During his annual cardiology appointment in December 2017, Plaintiff had a normal cardiovascular examination with the exception of some trace peripheral edema; he walked with a

4

cane. (Tr. 1462). The cardiologist noted there was no evidence of volume overload and he recommended Plaintiff lose weight and continue with his current dose of Losartan. *Id*.

In December 2017, Plaintiff treated at the emergency room for pain in his back and right shoulder following a fall. (Tr. 1326). Plaintiff had a normal CT scan of the lumbar and cervical spine, but had chronic wedging and degenerative changes of the mid-to-lower thoracic spine. (Tr. 1327). Providers examined Plaintiff and found normal cardiovascular function and "no edema"; he had a "little" weakness in his legs due to Scheuermann's disease. *Id*.

Plaintiff returned to Dr. Stabile in January 2018 reporting back pain. (Tr. 1363). His back was tender to palpation; he had a normal cardiovascular examination and no edema. (Tr. 1366).

Opinion Evidence

In January 2018, Dr. Stabile completed a medical source statement. (Tr. 311-12). Therein, he opined Plaintiff would likely be off-task at least 20 percent of a workday. (Tr. 311). This was due to his chronic pain, back and neck impairments, a need to lie down, and the return of his pain following an unsuccessful nerve block. *Id*. Plaintiff would be absent approximately four days per month. *Id*. When asked how many hours Plaintiff could work per day, Dr. Stabile circled "none". (Tr. 312). He could stand or sit for less than fifteen minutes at a time and less than sixty minutes in a workday. *Id*. He could lift less than five pounds on a frequent or occasional basis. *Id*. Plaintiff could occasionally bend or raise his arms over shoulder level. *Id*. He could never stoop, balance, work around dangerous equipment, or engage in fine or gross manipulation bilaterally. *Id*. He occasionally needed to elevate his legs above his waist. *Id*.

In March 2018, Dr. Stabile opined it was medically necessary for Plaintiff to use a single-prong cane while walking and standing. (Tr. 1470).

5

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 71-76. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational background who was limited in the ways she ultimately determined Plaintiff to be. (Tr. 72). The VE opined that such an individual could not perform Plaintiff's past work, but could perform work as an order clerk, document preparer, or a touch-up screener. (Tr. 73).

ALJ Opinion

In a decision dated October 11, 2018, the ALJ concluded Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. (Tr. 19). She determined Plaintiff had not engaged in substantial gainful activity since his alleged onset date (November 11, 2015). *Id*. Next, the ALJ found Plaintiff had severe impairments of: obstructive sleep apnea, obesity, degenerative disc disease, carpal tunnel syndrome status post bilateral release surgeries, and diastolic dysfunction. *Id*. However, none of these impairments (alone or in combination) met or equaled the severity of a listed impairment. (Tr. 18). Next, the ALJ concluded Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds, kneel, or crawl. He can occasionally stoop, crouch, and climb ramps or stairs. He can frequently handle and finger with the bilateral upper extremities. The claimant cannot use vibrating tools. He must avoid workplace hazards such as unprotected heights or dangerous moving machinery.

*Id*. She found Plaintiff unable to perform his past relevant work (Tr. 23), and was a younger individual on his alleged onset date (Tr. 24). There were jobs that existed in the national economy Plaintiff could perform given his age, education, work experience, and RFC. *Id*. Thus, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from November 11, 2015 through the date of her decision. (Tr. 25).

6

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2.        Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.        Does the severe impairment meet one of the listed impairments?

4.        What is claimant's residual functional capacity and can claimant perform past relevant work?

5.        Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the RFC finding is unsupported by substantial evidence because it does not account for his diastolic dysfunction. Relatedly, he asserts the ALJ's subjective symptom analysis is flawed because the ALJ did not account for his peripheral edema symptoms, caused by the diastolic dysfunction. Finally, Plaintiff argues the ALJ improperly discounted the opinion of his treating physician, Dr. Stabile. The Commissioner responds that the ALJ's decision is supported in each instance and should be affirmed. For the following reasons, the undersigned finds the decision supported and recommends it be affirmed.

Subjective Symptoms

Plaintiff argues the ALJ erred in her analysis of his subjective symptoms. Specifically, he alleges the ALJ failed to explain whether she found his peripheral edema and cellulitis symptoms consistent, or inconsistent, with the record. (Doc. 13, at 13-14). The undersigned finds no error here and recommends the Commissioner's decision be affirmed in this regard.

When a claimant alleges impairment-related symptoms, the Commissioner follows a two-step process to evaluate those symptoms. 20 C.F.R. §§ 404.1529 (a), 416.929(a); SSR 16-3p, 2017 WL 5180304, *2-8.[2] First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, *e.g*., pain. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *Id.* at *7-8. Those factors include

---

2. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated August 1, 2018 and thus SSR 16-3p applies. SSR 16-3p clarifies the language of the pre-existing standard in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'" *Huigens v. Soc. Sec. Admin.*, 718 F. App'x 841, 848 (11th Cir. 2017) (quoting *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)). Both rulings refer to the two-step process in 20 C.F.R. §§ 404.1529(c), 416.929(c).

daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Although the ALJ must "consider" the listed factors, there is no requirement that he discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that "an administrative law judge's credibility findings are virtually unchallengeable". *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation omitted). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

Here, the ALJ correctly identified the two-step process (Tr. 18), and first offered a general assessment of Plaintiff's subjective symptoms: "for the reasons explained in this decision", the "claimant's statements about the intensity, persistence, and limiting effects of his [] symptoms, they are inconsistent with the record as a whole. The claimant's objective clinical signs and laboratory findings do not support the degree of limitation alleged." (Tr. 20). The ALJ went on to describe some of the inconsistencies in detail. *See* Tr. 20-22. Specifically, to Plaintiff's diastolic dysfunction and related edema and cellulitis, the ALJ recognized the presence of these conditions but contrasted his "primary care records [which] generally revealed some hypertension and edema

10

at times" with his "otherwise normal respiratory and cardiovascular function." (Tr. 21). She found

a "relatively controlled" cardiac condition. (Tr. 21). In support, the ALJ cited to Plaintiff's primary

care visits. (Tr. 21-22) (citing Tr. 1424, 1414 (two February 2017 primary care visits with normal

cardiovascular examinations at each visit); Tr. 1424 (no edema at a February 2017 primary care

visit); Tr. 1414 ("mild" edema at Plaintiff's second February 2017 visit); Tr. 1375, 1385, 1394,

1404 (April through September 2017 primary care visits showing normal cardiovascular

examinations and no edema)). Consideration of the objective signs of Plaintiff's cardiovascular

symptoms, including edema, is one relevant factor an ALJ must consider when examining

subjective symptoms. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence

of this type is a useful indicator to assist us in making reasonable conclusions about the intensity

and persistence of your symptoms and the effect those symptoms, such as pain, may have on your

ability to work.").

The ALJ next considered Plaintiff's activity level – another relevant factor. (Tr. 22); 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ cited a "somewhat normal level of daily activity

and interaction" – this observation is supported. (Tr. 22). For example, Plaintiff occasionally drove

his mother where she needed to go (Tr. 41), occasionally ran a grocery errand for her (Tr. 58),

attended weekly church services (Tr. 58-59), and spent the weekends with his 12-year-old son (Tr.

59-60). The ALJ found Plaintiff's "ability to participate in such activities [] inconsistent with his

allegations of debilitating functional limitations." (Tr. 22).

Here, the ALJ did precisely what the ALJ was tasked to do – weigh the regulatory factors

against the evidence and make a credibility determination. The ALJ certainly did not discuss every

factor but, again, she was not required to. *White*, 572 F.3d at 287. Plaintiff's argues the ALJ's

findings as to his activities of daily living do not paint a whole picture. He cites contradictory

11

evidence in support, arguing that he could perform each of the ALJ's citied activities, but he could not perform them well, or even consistently. *See generally* Doc. 17 (Reply brief). However, as noted, the ALJ's citations to Plaintiff's objective medical history and activities of daily living are accurate, supported by the record. Taken together, they constitute substantial evidence to discount Plaintiff's subjective symptoms, including debilitating pain from edema. The Court must affirm "so long as substantial evidence [] supports the conclusion reached by the ALJ" even if substantial evidence or indeed a preponderance of the evidence *also* supports a claimant's position. *Jones*, 336 F.3d at 477. For these reasons, it is recommended the Commissioner's decision be affirmed in this regard.

Treating Physician

Plaintiff argues the ALJ erred when she did not abide by the treating physician rule when evaluating the opinions of Dr. Stabile. Specifically, Plaintiff argues the ALJ did not address Dr. Stabile's off-task/absenteeism opinion. The undersigned finds no error here and recommends the decision be affirmed in this regard as well.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is only given "controlling weight", however, if it: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with

other substantial evidence in the case record. *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, when the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). These reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5). When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, she is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Here, the ALJ collectively summarized Dr. Stabile's off-task/absenteeism opinion and a physical ability opinion given the same day; he assigned less than controlling weight to each:

> Dr. Sta[b]ile opined in January 2018 that the claimant could not work, could not sit or stand for even 15 minutes at a time or even one hour in a workday, and could not lift even 5 pounds. He also opined that the claimant could never stoop, balance, or perform fine or gross manipulation, and could only occasionally bend. Finally, he noted other environmental limitations, opined that the claimant would need to occasionally elevate his legs above his waist, and concluded that the claimant would be absent from work more than three times per month due to his impairments (Ex. Bl4E). I give little weight to these opinions. Although Dr. Sta[b]ile is a treating provider, he is not a specialist in the claimant's conditions. Furthermore, he supported his opinions only with the claimant's diagnoses, treatment history, and subjective pain level, but did not provide any objective clinical signs or findings to support the extreme limitations he opined (Ex. Bl4E/2). Additionally, his own

13

treatment records document only intermittent tenderness and spasm, with no evidence of weakness, antalgic gait, or other significant clinical findings that would support the extreme limitations he opined (Exs. B8F, Bl4F, Bl9F).

(Tr. 23).

At the outset, the undersigned notes that the ALJ expressly considered Dr. Stabile's off-task/absenteeism opinion – the opinion which Plaintiff argues she ignored. The ALJ cited Exhibit B14E/2, which corresponds to the off-task/absenteeism questionnaire at Tr. 311. (Tr. 23). Further, she specifically recognized Dr. Stabile's opinion that Plaintiff would be absent more than three days per month due to his impairments. *Id*. "Little weight" was assigned to the off-task/absenteeism opinion (and the same-day physical abilities opinion) for several supported reasons. *Id*.

First, the ALJ appropriately considered Dr. Stabile's specialty, or lack thereof (Tr. 23), the record shows he practices family medicine, *see* Tr. 1232. When articulating "good reasons", the specialization of the treating source is a relevant factor for the ALJ to consider. *Rabbers*, 582 F.3d at 660; 20 C.F.R. §§ 404.1527(c)(5); 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist").

Next, the ALJ rejected the opinions because they were supported "only with the claimant's diagnoses, treatment history, and subjective pain level" and lacked "any objective clinical signs or findings to support the extreme limitations he opined." (Tr. 23). This finding is accurate as the form specifically asks what reasons Dr. Stabile had for opining Plaintiff would be off- task or absent. *See* Tr. 311. Dr. Stabile responded by listing Plaintiff's diagnoses and subjective symptoms. *Id*. As discussed, the ALJ properly rejected Plaintiff's complaints of disabling pain. The ALJ not only recognized this lack of support by objective findings in the opinions, she also

14

cited the presence of inconsistencies between the opinions and Dr. Stabile's own treatment notes. Supportability and consistency are proper reasons for an ALJ to assign less than controlling weight to a treating source, so long as they are supported by substantial evidence, as they are here. *Rogers*, 486 F.3d at 242; 20 C.F.R. §§ 404.1527(c)(3)-(4); 416.927(c)(3)-(4). For example,  Dr. Stabile's treatment notes showed Plaintiff had a lack of significant clinical findings such as weakness or antalgic gait; the notes also show he had a "relatively controlled" cardiac condition (Tr. 21-22) (citing Tr. 1424, 1414 (two February 2017 primary care visits with normal cardiovascular examinations at each visit); Tr. 1424 (no edema at a February 2017 primary care visit); Tr. 1414 ("mild" edema at Plaintiff's second February 2017 visit); Tr. 1375, 1385, 1394, 1404 (April through September 2017 primary care visits showing normal cardiovascular examinations and no edema)).

For these reasons, Plaintiff's argument that the ALJ did not address Dr. Stabile's 2018 off-task/absenteeism opinion is without merit. The ALJ acknowledged the opinion and gave supported "good reasons" for discounting it. Thus, the Commissioner's decision should be affirmed.

RFC

Finally, Plaintiff argues the RFC is unsupported because it does not account for his diastolic dysfunction. Specifically, Plaintiff argues the ALJ erred when she failed to accommodate such by incorporating Plaintiff's need to elevate his legs. For the following reasons, the undersigned recommends the Commissioner's decision be affirmed in this regard.

A claimant's RFC is defined as "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1)(i), 416.927(e)(1)(i). However, it must be supported by substantial evidence. In formulating the RFC, the ALJ is not required to adopt any physician's

15

opinion verbatim. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.").

Here, Plaintiff argues that the ALJ did not "address the impact of [diastolic dysfunction]" on his functional ability. (Doc. 13, at 11). Specifically, Plaintiff contends the ALJ should have accommodated the condition, and the resulting symptoms of cellulitis and edema, by incorporating the need for him to elevate his legs into the RFC. In support, he offers "the presence of edema" on examination and his testimony that he wore compression stockings and elevated his legs to relieve swelling. *Id.* As discussed, while Plaintiff had "mild" edema at one visit (Tr. 1414) and "trace" edema at another (Tr. 1462), the ALJ found his cardiac condition "controlled" and cited several visits which showed no edema and normal cardiovascular examinations. (Tr. 22). Dr. Stabile opined Plaintiff needed to "occasionally" elevate his legs during an eight-hour workday (Tr. 312), but the ALJ also gave supported reasons for discounting his opinion, as explained, and she was not required to adopt Dr. Stabile's opined limitations, *Poe*, 342 F. App'x at 157. Plaintiff goes on to argue that, had the ALJ incorporated an elevation limitation, there would be no jobs available in the national economy, as testified to by the VE. *Id.* (citing Tr. 73). However, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here the ALJ incorporated the limitations she found supported by evidence such as Plaintiff's subjective symptoms, activities of

16

daily living, objective findings, and opinion evidence. Taken together, these constitute substantial evidence to support the ALJ's RFC – without a leg elevation restriction; it should thus be affirmed.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.


 s/ James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).